IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ALEX M. CAVE,

    Plaintiff,

v.                                             DOCKET NO.

THE GEO GROUP, INC., a Florida for-profit corporation; and SGT. MISTY LORENZ, in her individual and official capacity.

    Defendants.

## COMPLAINT

### Jurisdiction and Venue

1.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Eighth and Fourteenth Amendments to the United States Constitution.

2.    Jurisdiction is founded upon 28 U.S.C. § 1331 and §1343(3) and (4) in that this is an action to redress the deprivation, under color of law, of the rights secured by the Constitution of the United States, and by federal law.

### Parties

3.    Plaintiff, Alex M. Cave ("Cave" or "Plaintiff"), was at all times relevant to this action a citizen of the United States, and a resident of the South Bay Correctional Facility in South Bay, Palm Beach County, Florida. He has since moved to Massachusetts and is presently incarcerated.

4. Defendant, The GEO Group, Inc. (the "GEO Group") is a Florida for-profit corporation engaged in the business of administering prison facilities for the benefit of the Florida Department of Corrections, including the South Bay Correctional Facility.

5. Defendant, Sergeant Misty Lorenz ("Lorenz"), was at all times relevant to this action, acting under color of state law as a security sergeant employed by the GEO Group.

6. The GEO Group is engaged in a function traditionally reserved for the State of Florida, i.e. the custody and control of state prisoners.

## General Allegations

7. All conditions precedent necessary to the filing of this action have been satisfied or waived.

8. On October 12, 2013, while at South Bay Correctional Facility, Cave was approached by three inmates, James Gulley (DC# C00498); Laran Jones (DC# B09096); and Marcos Harding (DC# X30455).

9. Gulley, Jones, and Harding demanded that Cave turn over items Cave had purchased at the prison canteen. When Cave refused to do so, one of the men punched Cave in the face. The men tied Cave's hands behind his back with makeshift ropes.

10. One of the men had a razor and put it to Cave's neck and demanded the combination to Cave's locker, which Cave then disclosed.

11. After the men had opened Cave's locker and stolen Cave's property, one of the men choked Cave while the others pulled down Cave's pants and another sodomized Cave with his fingers.

12. After Cave was sexually assaulted, the men threatened to kill Cave if he told anyone about the assault and told him to stay in his cell that night.

13. Later, when security officers were performing their inmate count, Cave reported the assault to the on-duty sergeant, Sergeant Misty Lorenz.

14. Lorenz, however, told Cave that she did not have "time for this s--t" and did not take any action to place Cave in protective custody or to separate Cave from his assailants.

15. Lorenz did not conduct any investigation (i.e. review surveillance footage) at the time into Cave's report of assault.

16. Lorenz, moreover, made this statement very loudly with the intentional purpose of allowing one of Cave's assailants to hear her comments to his report of assault.

17. Two of Cave's assailants - Harding and Gulley - had views into Cave's cell and could see that he was speaking with Lorenz at the time she made her statement.

18. After the inmate count was over, Cave attempted to leave his cell to report the assault to another officer. However, he was immediately confronted by Gulley and Jones and struck in the head, causing him to lose consciousness.

19. When Cave regained consciousness, he was being sodomized by Jones with a latex glove containing AA batteries.

20. During this second assault, the glove tore. Gulley and Jones attempted to retrieve the batteries from Cave's anal cavity but were unsuccessful.

21. As Cave's assailants left, they took a radio, the make-shift rope which they had earlier tied to Cave's hands, and the glove with them.

22. Once Cave regained consciousness, he remained in his cell out of fear of assault until he reported the assault to another correctional officer as soon as the new shift change came in and a corrections officer did his rounds.

23. Cave was taken to the hospital and five AA batteries were removed from his rectum.

24. Sgt. Sammileta Prater removed a rope-like object from Harding's cell while investigators from the Palm Beach County Sheriff's Office were processing the crime scene.

25. An investigation by both Outer Perimeter Security ("OPS") and the Palm Beach County Sheriff's Office was conducted following the second assault on Cave.

26. The investigations by OPS and the Palm Beach County Sheriff's Office revealed that multiple cellblock cameras were not properly positioned to view the cellblock in which Cave and his assailants were housed.

## COUNT I - DELIBERATE INDIFFERENCE TO A SUBSTANTIAL LIKELIHOOD OF SERIOUS HARM

27. Paragraphs 1 - 26 are hereby incorporated by reference as though stated fully herein.

28. After Cave was first assaulted by Inmates Jones, Gulley, and Harding, there was a substantial risk of serious harm to Cave that those inmates would again attack and injure him.

29. Lorenz was subjectively aware of that risk when Cave told her that he had just been struck in the head and sexually assaulted by Jones, Gulley, and Harding.

30. Despite the knowledge of a substantial risk of further serious bodily harm to Cave, Lorenz was deliberately indifferent to that risk, stating that she did not have time for "this s--t."

31. Lorenz did not take any action to protect Cave from his assailants, even though she was in a position to ensure that Cave was safe from the inmates who attacked him.

32. As a direct and proximate result of Lorenz's deliberate indifference to Cave's safety and bodily integrity, Cave was again attacked and violated by the same inmates, who

injured him to the point that he had to be taken to the hospital to have foreign objects removed from his bowels.

33. Lorenz, at all times relevant to this matter, was using the authority that she possessed by virtue of state law.

34. The GEO Group was responsible for the safety of inmates at South Bay Correctional Facility.

35. The GEO Group was responsible for installing cameras in each of the cellblocks housing inmates at South Bay Correctional Facility.

36. The GEO Group did not ensure that cellblock cameras were properly operating and positioned to view the cellblock and inmate activity in the unit housing Cave, Jones, Gulley, and Harding.

37. Following the attacks in which he sustained his injuries, Cave learned from officers of the local Sheriff's Department and OPS that cellblock cameras had not been working properly for at least a week.

38. There was no security footage of Cave's cell throughout the entirety of the day of October 12, 2013.

39. Had cellblock cameras been properly positioned in the housing unit, corrections officers would have been able to see Jones, Gulley, and Harding entering Cave's cell (an activity which was a violation of the facility's rules and would have been actionable).

40. As a direct and proximate result of the GEO Group's deliberate indifference to the security and safety of the inmates in Cave's housing unit, Cave was attacked and violated by the same inmates twice on the same day, who injured him to the point that he had to be taken to the hospital to have foreign objects removed from his bowels.

41. Other than to personal ask Lorenz for help and protection, Cave did not have the ability to use any remedial mechanism to address Lorenz's actions due to the second attack.

42. Nevertheless, subsequent to the attacks, Cave wrote and submitted multiple grievances at South Bay that went unanswered without any stated corrected activity.

43. To Cave's knowledge, no action was taken by the GEO Group to correct Lorenz or to fix the security situation in the housing unit.

44. The GEO Group did not provide an adequate remedial mechanism to address Cave's situation and resulting harm.

45. Cave has attached an Affidavit in which he signs and swears to the accuracy of the information in his claim. *See* Affidavit of Alex Cave, attached as Exhibit 1.

46. As a consequence of the assault and rape which the GEO Group and Lorenz allowed to occur, Cave suffered pain and suffering, emotional distress, and mental anguish.

WHEREFORE the Plaintiff respectfully requests the following relief be awarded by the Court and against the GEO Group and Lorenz:

    a. Compensatory damages;

    b. Punitive damages;

    c. Reasonable costs and attorney's fees as authorized by 42 U.S.C. § 1988; and

    d. Any further relief the Court deems appropriate.

### COUNT II - NEGLIGENT HIRING AND RETENTION

47. Paragraphs 1 - 27 and paragraphs 28 - 46 are hereby incorporated by reference.

48.     At all times relevant to this complaint, Lorenz was an employee and agent of GEO Group, a corporation engaged in the business of administering prison facilities for the benefit of the Florida Department of Corrections including South Bay Correctional Facility.

49.     In December 2009, Lorenz was arrested in Highland County, Florida on two charges of battery, including one against a woman she knew to be pregnant.

50.     Lorenz induced the state attorney to drop the charges against her by entering into a deferred prosecution agreement.

51.     Although Lorenz avoided prosecution, this disposition of her case resulted in disciplinary charges against her by the Florida Department of Law Enforcement, placing her law enforcement accreditation in a probationary or suspended status for a violation of the "good moral character" requirement for certification of law enforcement officers.

52.     The information about Lorenz's criminal actions and her discipline by the Florida Department of Law Enforcement was available to the GEO Group and they knew or should have known through reasonable screening measures about Lorenz's violent and immoral acts.

53.     Lorenz's deliberate indifference to the safety of the Plaintiff by refusing to protect him when the Plaintiff reported that he had been sexually assaulted was plainly obvious based on Lorenz's past violent and immoral actions, which lead to the suspension of her right to work as a law enforcement officer.

54.     The GEO Group had a duty to all inmates under its custody and control, including the Plaintiff, to protect those inmates from reasonably foreseeable risks of serious harm.

55.     The GEO Group breached this duty by hiring Lorenz and permitting her to work in a capacity as a corrections officer over inmates at South Bay Correctional Facility.

56. As a direct and proximate result of both GEO Group's negligence and deliberate indifference, Lorenz caused the Plaintiff to be exposed to rape and assault which she was in a position to prevent.

WHEREFORE the Plaintiff respectfully requests that the Court grant the following relief against the GEO Group:

    a. Compensatory damages;

    b. Punitive damages; and

    c. Any further relief the Court deems appropriate.

### JURY TRIAL DEMAND

The Plaintiff demands a trial by jury on each count so triable.

Date: October 4, 2017

Respectfully Submitted,
ALEX CAVE
By his attorney,

/s/ Emir Sehic
FL Bar #: 0108914
BBO# 687938
SEHIC LAW, PLLC
501 Main Street, Rte 6A
P.O. Box 2071
Dennis, MA 02638
Tel: (774) 722-5517
Fax: (774) 221-6001
esehic@sehiclaw.com

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed with the Clerk of Court through the CM/ECF system this October 4, 2017. I also certify that the foregoing document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) or in some other authorized manner for those counsel or parties who are not authorized to received electronic Notice of Electronic Filing. non-registered participants.

/s/ Emir Sehic
FL Bar #: 0108914